Chief Justice Marshall
delivered the opinion of the Court.
This bill was filed in 1S42, by the Executor of Giles Smith, against J. H. Cunningham, for an account and settlement of a partnership concern which had existed between said Cunningham and Smith, as importers and vendors of goods in Springfield, and as purchasers and exporters of produce in the years 1831 and 1832. It appears that during the continuance of the partnership, which was for less than twenty months, Cunningham was principally engaged in attending to the export trade, and in purchasing at the Eastward, the goods which were to be sold at the store in Springfield, while Smith was principally concerned in conducting, with the aid of clerks, in their mutual employment, the busi *326 liess at the store. Duiing this period entries in the books were made principally by the clerk or clerks, and especially by E. Davidson, but a portion of them were made by Smith, and a still smaller portion by Cunningham. Upon the dissolution of the partnership in the fall of 1832, Cunningham continued the business, and retained the books and papers, which -however were open to the inspection of Smith, until his death in the summer of 1833, when Davidson- who was best acquainted with the transactions of the firm, also died.
The bill charges tha.t large profits were made by the firm. Cunningham alleges that there were no profits, but that there was an actual loss, and that the-firm was indebted to him for payments which he claims to have made, and he exhibits a statement of debits and credits, showing a considerable balance in his favor. No regular account seems to have been kept of the export trade, nor has the Commissioner to whom the case was referred, made any statement of that part of the business. And as the decree against Cunningham is based exclusively upon an assumed balance against him in the settlement of the business of merchandize carried on at the store, we have not deemed it necessary in the present state of the record, to scrutinize minutely the several accounts or statements relating to the export trade, and especially as upon the return of the cause to the Circuit Court, to which it will be remanded for errors hereafter to be noticed, that branch of the case will be open for further investigation should the parties choose to make it, and the accounts relating to it may, if desirable, be regularly audited and stated. At present we only remark that if the decree were in other respects unobjectionable, we should not be disposed to disturb it on account of anything which has been brought to our notice, with respect to the export trade in which the parties were concerned.
But we think the decree in respect to the mercantile business, and the Commissioner’s report on which it is based, are radically erroneous in the assumption that *327 Cunningham is to be charged with the whole amount of sales, to be estimated by adding to the invoice price of the goods, a conjectural profit of twenty-five per cent, estimated upon the statement of witnesses, as to the profit made in other stores, and the usual advance upon goods sold in Spi’ingfield._
Where books' have been kept by a mercantile firm they should be resorted to as giving the data upon which to settle the parlnership- — not a conjectural pro; fit derived from opinions of others as to what was the customary profit on siles in the place
*327 If the store and the goods and the books had been in the exclusive possession and control of Cunningham during the continuance of the partnership, as well as afterwards, he would have been justly chargable with the whole amount of sales and of goods remaining on hand, to be credited with disbursements and expenses for the firm* with debts lost without culpable negligence on his part, and with goods dr their proceeds drawn-from the store by the other partner. But even then the books of the firm regularly kept, w-ould be prima facie evidence of the amount of sales and of profits, and also of disbursements and expenses, and conjectural evidence and estimates from the business of other houses should only be resorted to to supply deficiencies, or to correct errors in the books, and when no other evidence more directly applicable could be had. It is proved in this case, and is conformable to general observation and experience, that of the merchants who had been engaged in business in Springfield, a considerable number had failed altogether, while another portion had quit the business without having made a profit, and a small part only had made money. These results are doubtless dependent in a considerable degree upon the personal habits and expenses of the individuals and their families.
But independently of the differences in these particulars, it is but a 'conjectural inference to say th.at because A, B, and C, have usually sold their goods at 50 per cent advance, and have made a profit of 25 or 30 per cent above all expenses and losses, therefore it is to be assumed that D, a merchant in the same town, sold his goods at the same advance and realized the same profits. He may have purchased on particular occa *328 sions at higher prices than his neighbors — he may by barter or 'otherwise have realized less upon his sales, and he may have made more bad debts. The ordinary expenses of the store may be estimated with reasonable accuracy upon general evidence of usage. But in other respects the profits depend so much upon the skill and care and vigilance of the individual, that it is unsafe to resort to general evidence and conjectural estimates, except as corroborative of more direct testimony, unless the direct evidence is withheld, or there be other ground of suspicion against the party who shoüld furnish it. In this case however, as we understand the. record, the books furnish direct evidence of the amount of purchase and sales, leaving uncertain nothing which is necessary to the ascertainment of profits, but the current expenses and the losses by bad debts, each of which is susceptible of reasonable ascertainment by proof directly applicable to the expenses and the debts. And as the books kept under the particular supervision of Smith, and under the general superintendence of both partners, furnish evidence of a high character between them, and which has not been successfully impeached, there would seem to be no grounds for resorting to an estimate of profits founded upon general evidence of what was usually made by others, even if Cunningham were properly chargable wi-th profits as such. But as Smith rather than Cunningham had the possession and control of the store and the sales and the books during the continuance oí the partnership, and Cunningham did not have the exclusive possession until the dissolution of the firm, wo do not perceive the materiality of the enquiry into the amount of profits as a ground of charge against Cunningham, as the partner settling up the business of the firm. He received and is accountable for the goods and debts on hand when the firm was dissolved. And whether the profits had been great or small, he is chargable with nothing more, unless it were shown that he had previously abstracted goods or other assets from this firm without accounting for them. *329 Nothing of this kind is alleged against him, nor is there, as we understand, any difficulty in ascertaining the amount of goods and other assets of the firm which ■'came to the hands of Cunningham .upon the dissolution. As the-settling partner, hé should be charged with this amount and no more, and should be credited by all disbursements made for the benefit of the firm, either in' payment of its liabilities, or in expenses of collection, not re-imbursed, also with all advances made in godds money or other assets, to Smith, or his .executor, aiid we think he is also entitled to the commission of fNd' per cent, allowed him in the decree, and he should also be credited by the amount of such debts due to the firití as without culpable negligence on his part, have not' been, and cannot be collected.
If as may be the case, the balance upon stating the' accounts, as above, should be against Cunningham, if should be applied first to the payment of the excess of his advances to the firm beyond twice the sum advanced by Smith, with interest on the excess as provided for in the terms of partnership, to be calculated up to the time when means were in his hands for the satisfaction of this claim, after or beyond satisfying the liabilities of the firm. Should there still be a balance in his hands,, it is to be applied first to reimburse his capital in the same proportion as Smith’s capital has been reimbursed. After doing this, or if it has already been done, the remaining balance, if any, in Cunningham’s hands, should be applied pro rata, to the reimbursement of the remaining capital put in by the partners respectively. If the capital exclusive of interest, cannot be reimbursed to both parties, there, were no profits made, or they are-lost in bad debts.
With regard to interest, the accounts are not presented in such a way as to authorize minute directions. It would seem to be proper, that Cunningham should be char-ged with interest on moneys in hand, and on debts bearing- interest until the same were disbursed for . the firm, or that if charged with interest to the time of sta- *330 ting the account, he should, be credited with interest on disbursements to the same time. . And if he is charged with interest upon the funds in his hands, and also with interest upon the balance of capital due to Smith, it would seem to be just that he-should be allowed interest upon his own capital, until it is credited on the balance of firm assets charged against him. And as any remaining balance after .thus reimbursing capital would be profits, and interest thereon charged against him, he would be entitled to two-thirds thereof, and Smith’s executor to the other third. Should it however appear that the assets chargablc to Cunningham were not sufficient to iheet the liabilities of the firm as satisfied by him, or not sufficient after meeting those liabilities to reimburse his capital in the same proportion as that of Smith has been reimbursed, he will, be entitled to a decree, against Smith’s executor for such sum as will equalize the parties.
None but parties xor^ean11 assign ^101,
These principles are stated only as a general guide for the settlement of the partnership, and may be modified with reference'to the facts as they may appear upon a regular and full statement of the accounts. We add with respect to the two debts (the Thurman, and the Lawrence &'Dougherty debts,) which have been considered in the report and decree as divided between the partners, that the.record of the suit of Smith’s executor for one-third of one of-these debts, tends strongly to prove that the decree is right in this respect, and we see no reason to doubt its correctness with regard to either debt.
The error assigned by the Commissioner, that the Court did not make him an allowance, can not be adjudicated in this case., He is no party to the writ of error, and we do not perceive that the Court acted on his claim. The costs of settlement so far as allowed at any time, should be divided between the parties, the other costs should abide the result of the suit, subject to the discretion of the Court.
Shuck, Harlan, Brown, and Barbour, for plaintiff; Thurman and Hill for defendant.
WI/erelore the decree is reversed, and the cause remanded with direction that an account be taken of the matters involved upon the principles . above indicated, and which may include the export trade herein referred to, and in taking which account the defendant Cunningham, may at the option of the complainant, be required to answer interrogatories before the Commissioner who may take and report such evidence as may be offered.